IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : : | Civil No. 2:14-cv-02827-SRC-CLW |
| Plaintiff, | : : | |
| v. | : : | Hon. Stanley R. Chesler, U.S.D.J. Hon. Cathy L. Waldor, U.S.M.J. |
| S. PAUL KELLEY, GEORGE TAZBAZ, ROGER D. LOCKHART, ROBERT S. AGRIOGIANIS, and SHAWN A. BECKER, | : : : : : | **Motion Day: June 3, 2019** |
| Defendants. | : | |

**BRIEF IN SUPPORT OF
MOTION FOR REMEDIES AGAINST DEFENDANT SHAWN A. BECKER**

# **TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................1

II.  PROCEDURAL HISTORY ...................................................................1

III.  FACTUAL BACKGROUND................................................................3

IV.  ARGUMENT.........................................................................................9

V.  CONCLUSION....................................................................................15

# **TABLE OF AUTHORITIES**

**Cases**

*SEC v. Antar*, 97 F. Supp. 2d 576 (D.N.J. 2000) .................................................9, 12

*SEC v. Berlacher*, 2012 WL 512201 (E.D. Pa. Feb. 15, 2012) ............................ 4-5

*SEC v. Children's Internet*, 2008 WL 4452340 (N.D. Cal. Oct. 3, 2008) ..............11

*SEC v. Desai*, 145 F. Supp. 3d 329 (D.N.J. 2015).........................................5, 12, 14

*SEC v. Haligiannis*, 470 F. Supp. 2d 373 (S.D.N.Y. 2007).....................................12

*SEC v. Hughes Capital Corp.*, 917 F. Supp. 1080 (D.N.J. 1996) .................. 9, 11-12

*SEC v. Martino*, 255 F. Supp. 2d 268 (S.D.N.Y. 2003..............................................11

*SEC v. Mattera*, 2013 WL 6485949 (S.D.N.Y. Dec. 9, 2013) ................................11

*SEC v. One or More Unknown Traders in the Common Stock
       of Certain Issuers*, 825 F. Supp. 2d 26 (D.D.C. 2010)..................................14

*SEC v. Patel*, 61 F.3d 137 (2d Cir. 1995) .................................................................9

*SEC v. Randy*, 38 F. Supp. 2d 657 (N.D. Ill. 1999)..................................................11

*SEC v. Teo*, 746 F. 3d 90 (3d Cir. 2014)..................................................................12

**Statutes**

15 U.S.C. §77e ..........................................................................................................2

15 U.S.C. §77q(a) .....................................................................................................2

15 U.S.C. §77t(d)(2) ................................................................................................12

15 U.S.C. §77t(d)(2)(C) ..........................................................................................13

15 U.S.C. §78i(a) ...................................................................................................... 2

15 U.S.C. §78j(b) ...................................................................................................... 2

15 U.S.C. §78o(a) ..................................................................................................... 2

15 U.S.C. §78u(d)(3)(B) ......................................................................................... 12

15 U.S.C. §78u(d)(3)(B)(iii) ................................................................................... 13

17 C.F.R. §201.600 ................................................................................................ 12

17 C.F.R. §201.1001 .............................................................................................. 13

17 C.F.R. §240.10b-5 ............................................................................................... 2

17 C.F.R. §242.101 .................................................................................................. 2

I.      INTRODUCTION

Plaintiff, the United States Securities and Exchange Commission ("SEC"), respectfully requests this Court order Defendant Shawn A. Becker to pay disgorgement of ill-gotten gains, prejudgment interest on this disgorgement amount, and a third-tier civil penalty for his violation of the anti-fraud, broker-dealer registration, and securities offering registration provisions of the federal securities laws. While acting as an unregistered broker, Becker participated in unregistered securities offerings of various companies' stock, and further engaged in illicit manipulation of the price of those companies' stock. Becker previously agreed to be enjoined from future violations of the relevant provisions of the securities laws and to be barred from participating in any offering of penny stock. The only matter outstanding against Becker is the imposition of monetary remedies. For the reasons detailed below, disgorgement with prejudgment interest and a significant civil penalty are appropriate.

II.     PROCEDURAL HISTORY

This case involves violations of the federal securities laws with respect to three companies. The SEC's complaint alleges that Becker and other defendants engaged in a fraudulent scheme to illegally reap millions in profits by taking two Chinese companies public through reverse mergers with U.S. public "shell" companies, hiding their control over the Chinese companies and manipulating the

1

trading of the companies' stock. [Dkt # 1 at ¶¶ 1-3.] The complaint further alleges that Becker and other defendants engaged in a scheme to inflate the price and volume of a stock of a third Chinese company that had previously been taken public. [*Id.* at ¶ 4.] Becker was charged with violations of Sections 5 and 17(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§77e and 77q(a); Sections 9(a), 10(b), and 15(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78i(a), 78j(b), 78o(a); and Rules 10b-5 and 101 thereunder, 17 C.F.R. §§ 240.10b-5 and 242.101. [Dkt. # 1 at 47-51.]

The SEC and Becker previously reached a settlement in this matter in which Becker consented to the entry of permanent injunctions and a bar from participating in any offering of penny stock, waived trial of this matter, and agreed that the issue of monetary remedies would be resolved at a later date. [Dkt. # 31; *see also* Dkt. # 33.] More specifically, in his consent, Becker "agree[d] that the Court shall order disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty," but that "the amounts of the disgorgement and civil penalty shall be determined by the Court upon motion of the" SEC. [Dkt. # 31-1 ¶ 3; *see also* Dkt. # 33 at VIII.]

The SEC and Becker have been unable to reach any further settlement in this matter. In late 2018, Becker produced additional financial information to the SEC, and in March 2019 the SEC deposed Becker with respect to his financial condition

2

and other issues. However, the SEC and Becker have been unable to reach a settlement as to monetary remedies, and therefore the SEC is filing the instant Motion.

### III. FACTUAL BACKGROUND

Becker previously agreed that, for purposes of determining remedies, the allegations of the Complaint are deemed true. [Dkt. # 31-1 ¶ 3.] Those undisputed facts establish the following.

Becker, along with the other named defendants, engaged in two nearly identical schemes to illegally reap substantial profits by taking two Chinese companies, China Auto Logistics, Inc. ("China Auto"), and Guanwei Recycling Corp. ("Guanwei"), public through reverse mergers with U.S. public shell companies and engaging in manipulative trading of these new public companies' stock. [Dkt. # 1 ¶ 1.] Defendants S. Paul Kelley, George Tazbaz, Roger Lockhart, and Robert Agriogianis (the "Kelley Group") agreed with the management of China Auto and Guanwei – who were at the time privately-held companies – to pay all costs related to taking the companies public in the U.S. in exchange for control of a substantial portion of the stock in the resulting public company. [*Id.* ¶¶ 32-33, 85-86.] As part of these agreements, the Kelley Group told the management of China Auto and Guanwei that they could quickly increase the companies' stock price and volume to levels sufficient for listing on NASDAQ or another U.S.

3

exchange, in light of their control over the vast majority of the companies' publicly-traded stock. [*Id.* ¶¶ 34, 87.][1] The Kelley Group effected the reverse mergers of China Auto and Guanwei in November 2008 and November 2009, respectively, and the stocks began trading on the so-called Over-The-Counter Bulletin Board ("OTCBB"). [*Id.* ¶¶ 19-20, 44-46, 92-94.] The Kelley Group and Becker also orchestrated a scheme to tout and manipulate the stock of a third company – Kandi Technologies Group, Inc. ("Kandi") – that the Kelley Group had previously taken public. [*Id.* ¶¶ 132-146.]

    Becker played a key role in the fraudulent schemes, and in doing so he violated numerous provisions of the federal securities laws. For example, Becker offered and sold both China Auto and Guanwei stock when that stock was not registered. [Dkt. # 1 ¶¶ 48-49, 98-99.] Relatedly, Becker directly solicited numerous investors and recommended that they purchase shares in China Auto, Guanwei, and Kandi, even though he was not a registered broker. [*Id.* ¶¶ 55, 105, 146.a, 151; *see generally id.* ¶¶ 53, 103.] This conduct violated the securities registration provisions of Section 5 of the Securities Act by offering and selling securities for which there was no registration statements in effect. *See, e.g., SEC v.*

---

[1] While the Kelley Group received approximately 30% of the new public companies' stock, in light of various trading restrictions on the remaining 70% of the stock, in reality the Kelley Group initially controlled more than 90% of the shares available for public trading – the "public float." [Dkt. #1 ¶¶ 32, 85.]

4

*Berlacher*, 2012 WL 512201, at *3 (E.D. Pa. Feb. 15, 2012) ("Section 5 prohibits the sale or delivery of unregistered securities, along with any offers to sell or deliver unregistered securities"). In addition, this conduct violated the broker registration provisions of Section 15(a) of the Exchange Act.  [*See generally Dkt. # 1* ¶ 148.] *See also SEC v. Desai*, 145 F. Supp. 3d 329, 336 (D.N.J. 2015) ("Section 15(a) requires that any person acting as a broker—'any person engaged in the business of effecting transactions in securities for the account of others'—must register with the SEC."). Becker was not registered as a broker with the SEC, or affiliated with a registered broker, during the time that he actively solicited investors to purchase stock in China Auto, Guanwei, and Kandi. [*Dkt. # 1* ¶¶ 149, 151; *see also* ¶¶ 131.a, 146.a-b.] Further, he was compensated for this conduct in the form of stock. [*Id.* ¶ 151.] *See Desai*, 145 F. Supp. 3d at 336 ("There is no question that [defendant] acted as a broker by actively soliciting potential investors, possessing investor funds, and receiving compensation for the transactions."). Becker also violated Rule 101 of Regulation M by purchasing shares of China Auto and Guanwei during the public distribution of those companies' shares. [*Id.* ¶¶ 152-155, 172-174.] Becker has agreed to be enjoined from future violations of Section 5 of the Securities Act, Section 15 of the Exchange Act, and Rule 101. [*See, e.g.*, Dkt. # 33 at I, V, VI.]

Becker also violated of the anti-fraud provisions of the securities laws. Principally, Becker engaged in manipulative trading in the new public companies' stock to artificially inflate the price and volume so that – consistent with the Kelley Group's promises – the companies could get listed on the NASDAQ. [*Dkt.#1* ¶¶ 56-57, 131.] With respect to China Auto, Becker engaged in manipulative trading practices such as "marking the close" – placing trades near the end of a trading day in order to influence the price of the stock. [*Id.* ¶¶ 75-76; *see also id.* ¶ 57.] He also broke down large buy or sell orders into numerous smaller trades – even though it cost him more to execute those small trades – in order to make it appear that the stock was more heavily traded and induce others to buy. [*Id.* ¶¶ 77-78.] He further engaged in so-called "wash trades" – being on both the buy and sell side of the same trade to artificially inflate the reported trading volume of the stock and, sometimes, the stock price – and "matched trades" – sales to other members of the Kelley Group done to maintain the stock price. [*Id.* ¶¶ 79, 83.b.]

Indeed, Becker engaged in particularly egregious instances of matched trading with the other members of the Kelley Group when he was forced to sell all of his China Auto stock to satisfy margin loans that he had used to support his lifestyle. [*Id.* ¶¶ 68-69.] In June and July 2010, in order to satisfy margin loans, Becker sold more than 80,000 shares of China Auto stock, more than 50,000 of which were sold in arranged matched trades to other members of the Kelley Group.

[*Id.* ¶ 70.] Then, in August 2010, Becker was notified by his brokerage firm that he would be forced to sell all of his remaining China Auto stock – over 350,000 shares. [*Id.* ¶ 71.] Becker knew that he could not sell these shares without materially impacting the stock price. [*Id.*] Becker therefore contacted the Kelley Group, told them he was being forced to sell the stock, and arranged matched trades of more than 100,000 shares. [*Id.* ¶¶ 72-73.] All of this manipulative trading was done with scienter and for the purpose of creating a false or misleading appearance of an active market in the stock and inducing others to buy or sell the stock. [*Id.* ¶ 59.]

Becker engaged in similar manipulative trading with respect to Guanwei's stock. [*See generally id.* ¶¶ 106-107.] For example, Becker "marked the close" for Guanwei, placing orders near the close of trading to inflate the stock price. [*Id.* ¶¶ 117.a, 118.b-c, 119.a, c.] Becker also broke down large orders into smaller ones in order to make it appear that the stock was more heavily traded and induce others to buy. [*Id.* ¶ 118.] Finally, Becker engaged in numerous wash and matched trades with other members of the Kelley Group. [*Id.* ¶¶ 118.b, 119.a, c, d.] As with the China Auto scheme, Becker's manipulative trading of Guanwei shares was done with scienter and for the purpose of creating a false or misleading appearance of an active market in the stock and inducing others to buy or sell the stock. [*Id.* ¶ 109.]

7

Becker also engaged in manipulative trading with respect to Kandi's stock. [*See generally id.* ¶¶ 132, 146.] The Kelley Group had previously taken Kandi public and gotten it listed on the NASDAQ, but by the end of 2008, Kandi's stock was trading at less than $1 per share. [*Id.* ¶ 4, 134.] Two members of the Kelley Group – defendants Tazbaz and Lockhart – agreed to prop up Kandi's stock price in exchange for a substantial number of additional Kandi shares and Kandi's agreement to cover some of its own costs and expenses of going public. [*Id.* ¶¶ 135-136.] Becker was brought in to increase Kandi's stock price, and in exchange was given Kandi shares. [*Id.* ¶¶ 137, 139.] As he had with China Auto and Guanwei, Becker engaged in numerous manipulative trades in Kandi stock, including wash trades, matched trades, marking the close, and breaking down large orders into smaller ones to create the appearance of an active market. [*Id.* ¶ 141.] Indeed, as with China Auto, when Becker was forced to liquidate thousands of shares of Kandi stock, he arranged a matched trade with defendant Lockhart to buy the substantial majority of those shares. [*Id.* ¶ 143.] As with all of the manipulative trading in this case, Becker's trading was done with scienter. [*Id.* ¶ 133.] Becker's manipulative trading violated – and Becker has agreed to be enjoined from future violations of – Section 17(a)(1) and (3) of the Securities Act, and Sections 9(a), 10(b), and Rule 10b-5 of the Exchange Act. [*See, e.g.*, Dkt. # 33 at II, III, IV.]

## IV. ARGUMENT

Becker's misconduct, detailed above, entitles the SEC to significant remedies. First, Becker should be ordered to disgorge his ill-gotten gains. Second, Becker should be ordered to pay prejudgment interest on this disgorgement. And third, the court should impose third-tier civil penalties.

The SEC requests that the Court order Becker to disgorge $2,268,332, which is the compensation Becker received for his participation in the schemes. *See* Ex. 1 at ¶¶ 9, 13, 15 (Decl. of M. Hennigan). Disgorgement is intended to deprive a wrongdoer of his ill-gotten gains. *See, e.g.*, *SEC v. Antar*, 97 F. Supp. 2d 576, 578 (D.N.J. 2000). Because disgorgement is an equitable remedy, courts are vested with "broad discretion in fashioning an appropriate disgorgement order." *Id.* (citing *SEC v. Hughes Capital Corp.*, 917 F. Supp. 1080, 1085 (D.N.J. 1996)). Disgorgement need only be "'a reasonable approximation of profits causally connected to the violation.'" *Id.* (quoting *SEC v. Patel*, 61 F.3d 137, 139 (2d Cir. 1995)). Once the SEC meets its burden, the burden shifts to the defendant to "'demonstrate that the disgorgement figure is not a reasonable approximation.'" *Id.* (quoting *SEC v. Hughes Capital Corp.*, 917 F. Supp. at 1085).

Becker profited handsomely from his misconduct. Specifically, Becker was compensated in the form of stock for soliciting investors in the China Auto, Guanwei, and Kandi offerings. [*See, e.g.*, Dkt. # 1 at ¶ 151.] *See also* Ex. 2 (Becker

9

investigative testimony) at 25:9-28:23, 134:6-135:19, 152:25-154:12, 177:23-179:21 (Becker acknowledging he was compensated in stock for finding investors).[2] Becker received approximately 220,000 shares of China Auto stock, 80,000 shares of Guanwei stock, and 269,000 shares of Kandi stock. *See* Ex. 1 at ¶¶ 5, 8, 10, 14 (Decl. of M. Hennigan).[3] The SEC requests the Court order Becker to disgorge the profits he made from the sales of these shares.[4]

Courts have ordered disgorgement of commissions or other compensation received in connection with violations of the registration provisions of the federal

---

[2] The stock was principally deposited into an account in the name of Grace Consulting at TD Ameritrade. *See* Ex. 1 at ¶¶ 3, 5, 10, 14 (Decl. of M. Hennigan). The stock was principally sold out of that account, but certain shares of China Auto and Guanwei stock were also transferred to and then sold out of an account in the name of Grace Consulting at Charles Schwab. *See id.* at ¶¶ 3, 7, 12. A small number of shares of China Auto stock was also deposited into, and sold out of, an account at Scottrade in the name of Grade Consulting. *See id.* at ¶¶ 3, 8. Becker controlled all of these accounts. *See* Ex. 2 at 18:11-15 & Ex. 3 at SB0000514 (Becker acknowledging he controlled all accounts listed on SB0000514).

[3] Becker's trading records, summarized in part in the declaration of Michael Hennigan, are consistent with Becker's investigative testimony regarding the shares he received. *Compare* Decl. of M. Hennigan, Ex. 1 at ¶¶ 5, 8, 10, 14 (220,430 shares of China Auto stock received, 80,000 shares of Guanwei stock received, 269,000 shares of Kandi stock received) *with* Becker's testimony, Ex. 2 at 136:8-10 (Becker estimating receiving 180,000 shares of China Auto stock), 152:5-153:25 (Becker estimating receiving 220,000 shares of Guanwei stock and then splitting the stock three ways), 177:10-182:10 (Becker estimating receiving 400,000 shares of Kandi stock and giving between 150,000 and 200,000 shares to another individual).

[4] Becker also purchased stock in these three companies. The SEC does not seek disgorgement related to the purchased shares.

securities laws. *See SEC v. Martino*, 255 F. Supp. 2d 268, 279 & n.23 (S.D.N.Y. 2003) (ordering unregistered broker to disgorge compensation received, including the value of shares of stock); *see also, e.g.*, *SEC v. Mattera*, 2013 WL 6485949, *14 (S.D.N.Y. Dec. 9, 2013) (ordering disgorgement of commissions retained in connection with unregistered offerings); *SEC v. Children's Internet*, 2008 WL 4452340, *4 (N.D. Cal. Oct. 3, 2008) (ordering disgorgement of commissions and profits from sales of stock received as compensation for participating in illegal scheme); *SEC v. Randy*, 38 F. Supp. 2d 657, 674 (N.D. Ill. 1999) (ordering disgorgement of commissions received in connection with violations of registration and anti-fraud provisions of the securities laws). Here, Becker's compensation – the profits made on Becker's sale of the stock that he received for his participation in the illegal schemes – totals $2,268,332. *See* Ex. 1 at ¶ 9 (China Auto shares sold for $819,065), ¶ 13 (Guanwei shares sold for $283,681), ¶ 15 (Kandi shares sold for $1,165,586).[5]

The SEC also seeks prejudgment interest on this disgorgement amount, calculated based on the IRS rates for underpayment of taxes. *See, e.g.*, *SEC v.*

---

[5] Becker testified that he "purchased" his Kandi stock at a price of $1.10 per share, but later admitted that he had not actually paid this money. *See* Ex. 2 at 177:10-179:21.

*Hughes Capital Corp*, 917 F. Supp. at 1090.[6] Prejudgment interest is "a matter of judicial discretion," and courts consider "both compensation and fairness" in awarding prejudgment interest. *Id.* at 1089. Prejudgment interest is intended to ensure that a defendant is deprived of his ill-gotten gains, since without an award of interest the defendant in essence received an interest-free loan in the amount of his illicit profits. *SEC v. Antar*, 97 F. Supp. 2d at 589. Becker received his illicit compensation on various dates in 2009 and 2010. *See* Ex. 1 at ¶¶ 5, 8, 10, 14 (Decl. of M. Hennigan). The SEC has calculated Becker's prejudgment interest from the last day Becker received shares of China Auto, Guanwei, and Kandi stock, respectively, that were payment for his illicit solicitation. Prejudgment interest calculated from those dates until the date Becker consented to the entry of a judgment against him – April 13, 2015 – amounts to $417,868. *See* Ex. 1 at ¶ 16 (Decl. of M. Hennigan).[7]

Finally, the SEC requests that the Court impose civil penalties under the relevant provisions of the Securities Act and the Exchange Act. *See* 15 U.S.C. §§

---

[6] The Third Circuit has approved the use of the IRS underpayment rate in SEC prejudgment interest calculations. *See SEC v. Teo*, 746 F. 3d 90, 109 (3d Cir. 2014) (citing 17 C.F.R. § 201.600).

[7] Becker's consent provides that prejudgment interest will be calculated from September 1, 2009. [Dkt. # 31-1 at 3.] Where Becker received certain shares after that date, the SEC has calculated prejudgment interest from the last day that Becker received shares of stock, which is a more conservative calculation.

12

77t(d)(2), 78u(d)(3)(B). "[A] civil penalty is intended to both punish and serve as a deterrent mechanism." *SEC v. Desai*, 145 F. Supp. 3d at 338-39 (citing *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007)). Civil penalties are calculated using a three-tier penalty structure. Third-tier penalties are appropriate when the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and the violation "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). At the time of most of Becker's misconduct, the maximum third-tier penalty for an individual was set at the greater of $150,000 per violation, or in the alternative, the "gross amount of pecuniary gain" as a result of the violation. *Id.*, *see also* 17 C.F.R. § 201.1001 (amending statutory amounts for violations occurring between March 4, 2009 and March 5, 2013.).[8]

Courts look to a number of factors to determine whether a civil penalty should be imposed, including

> (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty

---

[8] Although Becker's role in the illicit schemes began in November 2008 [*see* Dkt. # 1 ¶ 48], the bulk of Becker's misconduct and manipulative trading occurred in 2009 and 2010. [*See id.* ¶¶ 69-73, 98, 106, 116-119, 132, 137-139, 141, 143.]

13

> should be reduced due to the defendant's demonstrated current and future financial condition.

*SEC v. Desai*, 145 F. Supp. 3d at 338-39. As discussed above, Becker participated substantially in the illegal schemes related to China Auto, Guanwei, and Kandi, including by acting as an unregistered broker, by offering unregistered securities, and by engaging in market manipulation. Indeed, he repeatedly engaged in manipulative trading techniques to affect the stock price of three different public companies. In doing so, he artificially inflated the price of these issuers' stock, creating a significant risk of substantial losses to innocent purchasers of the stock. In these circumstances, third tier penalties are appropriate. *See, e.g.*, *SEC v. One or More Unknown Traders in the Common Stock of Certain Issuers*, 825 F. Supp. 2d 26, 33-34 (D.D.C. 2010) (collecting cases).

There are numerous ways to calculate an appropriate third tier penalty in this case. For example, were the Court to calculate Becker's penalty as the amount of his gross pecuniary gain, that penalty would equal the amount of Becker's disgorgement: $2,268,332. Alternatively, were the Court to assess a third tied penalty for each of the six statutory violations at issue, that penalty would equal $900,000. However the Court determines to calculate the amount, a significant third tier penalty is appropriate.

## V. CONCLUSION

For the reasons stated above, the Court should order Becker to disgorge his ill-gotten gains, with prejudgment interest, and pay third-tier civil penalties. This motion will resolve all of the issues remaining against Becker.[9]

DATED: April 16, 2019.

                                            Respectfully submitted,

/s/ *Nicholas Heinke*
Leslie J. Hughes, Colo. Bar No. 15043
Nicholas Heinke, Colo. Bar No. 38738
*Counsel for Plaintiff*
U.S. SECURITIES AND EXCHANGE COMMISSION
1961 Stout Street, Suite 1700
Denver, CO  80294-1961
Telephone:  (303) 844-1000
Fax:            (303) 297-3529
Emails:      HughesLJ@sec.gov
                   HeinkeN@sec.gov

---

[9] Remedies issues remain against Defendant Robert Agriogianis. [Dkt. # 6.] The SEC claims against all other defendants have been resolved.

15

## **CERTIFICATE OF SERVICE**

I certify that on April 16, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and served a copy by UPS to the following parties through their counsel:

Joseph Dever
Cozen O'Connor
45 Broadway 16th Floor
New York, NY 10006
*Attorneys for Robert Agriogianis*

Arthur E. Fillmore II, Esq.
Aegis Professional Services
1712 Main Street, # 340
Kansas City, MO 64108
*Attorney for Shawn A. Becker*

Kevin J. Russell, Esq., LLC
921 Summit Avenue
Jersey City, New Jersey 07307
*Attorney for Shawn A. Becker*

/s/ *Nicholas Heinke*