NOT FOR PUBICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : : : | **Civil Action No. 14-2827 (SRC)** |
| Plaintiff, | : : | **OPINION** |
| v. | : : |  |
| S. PAUL KELLEY, et al., | : : |  |
| Defendants. | : : |  |

**CHESLER**, District Judge

  This matter comes before the Court upon the motion filed by Plaintiff, the United States Securities and Exchange Commission ("SEC"), for an order setting remedies and entering final judgment against Defendant Shawn A. Becker ("Becker") pursuant to Federal Rule of Civil Procedure 54(b). Becker, appearing pro se, has opposed the motion. Additionally, with leave of Court, Becker filed a sur-reply to address certain statements made by the SEC in its reply. The Court has considered all papers filed by the parties. It proceeds to rule based on the written submissions and without oral argument, pursuant to Federal Rule of Civil Procedure 78.

  **I. BACKGROUND**

  The claims against Becker arise from his violation of federal securities laws in connection with a scheme to inflate the stock value of three companies traded publicly in the United States securities market. This motion for remedies and final judgment is predicated on a settlement entered into by the SEC and Becker, wherein the truth of the allegations against

Becker has been admitted for purposes of ordering appropriate remedies. The Court will summarize the allegations briefly, as follows:

Becker engaged in fraudulent schemes in which he solicited investors in three Chinese companies, which had been taken public in the United States, and manipulated the market to boost the stock price and trading volume of these companies. As compensation for his participation in these illegal schemes, Becker received stock in the three Chinese companies. He later sold the stock at a profit. Moreover, he acted as an unregistered broker and offered and sold unregistered securities. For the foregoing conduct, this civil enforcement action brought by the SEC charged Becker with violations of the Securities Act of 1933 ("Securities Act"), the Securities and Exchange Act of 1934 ("Exchange Act"), and the Exchange Act's implementing regulations.

Defendant Becker consented to entry of judgment against him, consisting of, among other things, a permanent injunction. Becker also "agree[d] that the Court shall order disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]." Consent of Defendant Shawn A. Becker, April 3, 2013 ("Becker Consent"), ¶ 3 (ECF 31-1). The settlement between the SEC and Becker provides that the amounts of the disgorgement and civil penalty would be determined by the Court at a later date. Becker further agreed that, upon the SEC's motion for a determination of appropriate remedies, he would be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint and that "for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court." (Id.)

Predicated on the consent given by Becker and the aforementioned settlement agreement, the Court entered judgment against Becker on July 21, 2015. The judgement enjoins him from engaging in certain conduct in violation of the Securities Act, the Exchange Act, and federal securities regulations and from participating in the offer of penny stocks. The SEC and Becker thereafter conducted discovery in an attempt to determine the appropriate monetary penalties. The parties failed, however, to agree as to the amount of monetary remedies.

Thus, in accordance with the parties' agreement and the Court's July 21, 2015 Judgment, the SEC now brings the instant motion for a determination of the amounts of disgorgement, related prejudgment interest, and civil penalties to be imposed on Becker in a final order of judgment against him. The Court will address each remedy sought in turn.

**II. DISCUSSION**

**A. Disgorgement**

The SEC seeks disgorgement of the profits Becker received as a result of the misconduct alleged in the Complaint.

Where a party violates federal securities laws, a district court is authorized to order the disgorgement of any ill-gotten gains and to determine the amount to be disgorged. SEC v. Universal Express, Inc., 646 F. Supp. 2d 552, 562-63 (S.D.N.Y. 2009), aff'd, 438 F. App'x 23 (2d Cir. 2011).; see also SEC v. McCaskey, No. 98 Civ. 6153, 2001 U.S. Dist. LEXIS 13571, at *21 (S.D.N.Y. Sept. 6, 2001) ("Disgorgement of illicit profits is a proper equitable remedy for securities fraud . . . designed to deprive wrongdoers of the profits of their wrongdoing.") (citations omitted). Disgorgement is not a punitive measure. SEC v. Antar, 97 F. Supp. 2d 576, 578 (D.N.J. 2000) (citing SEC v. Hughes Capital Corp., 917 F. Supp. 1080, 1085 (D.N.J. 1996),

aff'd, 124 F.3d 499 (3d Cir. 1997)). Rather, it serves the primary purpose of depriving one who violates securities laws from enriching himself by his wrongs. Antar, 97 F. Supp. 2d at 578. It is an equitable remedy, and therefore a district court "has broad discretion in fashioning an appropriate disgorgement order." Id. (citing Hughes Capital, 917 F. Supp. at 1085). The SEC, as the plaintiff in a civil enforcement action, bears the burden of establishing that the amount of disgorgement sought is a "reasonable approximation of unlawful profits." Id. It need not, however, prove the precise amount of profits derived as a result of the securities laws violations. Id. (citing Hughes Capital, 917 F. Supp. at 1085) ("plaintiff is not required to trace every dollar of proceeds misappropriated by the defendants . . . nor is plaintiff required to identify monies which have been comingled by them."). Once the plaintiff satisfies the burden of demonstrating the approximate amount of the defendant's unlawful profits, the burden of proof shifts to the defendant to "'demonstrate that the disgorgement figure is not a reasonable approximation.'" Id. (quoting Hughes Capital, 917 F. Supp. at 1085).

Here, the SEC has demonstrated that Becker received stock in the three companies involved in the illegal scheme and profited from his sale of that stock. It has established that Becker's profits totaled approximately $2,268,332, a fact which Becker does not dispute. Becker's opposition, rather, consists of his assertions that ordering disgorgement would be unjust because he suffers from poor health and because he finds himself in a precarious financial situation which renders him unable to pay. Putting aside, for the moment, the fact that Becker has not substantiated his claims that he is gravely ill and destitute, Becker's arguments are completely unavailing to defeat the disgorgement sought by the SEC. A defendant's "financial hardship is not grounds for denying disgorgement." SEC v. McCaskey, No. 98 Civ. 6153, 2002

4

U.S. Dist. LEXIS 4915, at *17 (S.D.N.Y. Mar. 26, 2002). A wrongdoer's present inability to pay is irrelevant to the issues of whether disgorgement is warranted and how much money a defendant should be ordered to pay. Id. The "Court may order disgorgement in the amount of the wrongdoer's total gross profits, without giving consideration to whether or not the defendant may have squandered and/or hidden the ill-gotten profits." SEC v. Rosenfeld, No. 97 Civ 1467, 2001 U.S. Dist. LEXIS 166, at *2 (S.D.N.Y. Jan. 9, 2001). This approach is not intended to be punitive but rather is designed to promote the deterrent effect of the disgorgement remedy by making securities violations unprofitable. SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1474 (2d Cir. 1996) ("The deterrent effect of an SEC enforcement action would be greatly undermined if securities law violators were not required to disgorge illicit profits.") (quoting SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1104 (2d Cir. 1972)).

In short, the SEC has properly and adequately supported its application for an order of disgorgement. It has provided uncontroverted proof that Becker profited approximately $2,268,332 from the sale of stock he received in compensation for his participation in the securities fraud schemes. Accordingly, and in its discretion, the Court finds that it is appropriate to disgorge Becker's profits from the subject securities laws violations in the amount of $2,268,332.

### B. Prejudgment Interest

The SEC also seeks prejudgment interest on the disgorgement amount. In a securities enforcement action, an award of prejudgment interest promotes the goal of depriving a defendant of his or her ill-gotten gains by undoing what would otherwise constitute an interest-free loan of the unlawful profits. Antar, 97 F. Supp. 2d at 589. The Court has discretion in ordering

prejudgment interest, and its evaluation should consider both compensation and fairness. Hughes Capital, 917 F. Supp. at 1089. Here, the Court finds that both of those goals would be furthered by ordering Becker to pay prejudgment interest on the amount he unlawfully profited.

It is uncontroverted that Becker received his illicit compensation in the form of shares of stock in the three companies involved in the subject securities fraud schemes. The SEC notes that Becker received these shares on various dates in 2009 and 2010 and submits that prejudgment interest should be calculated from the dates on which Becker last received shares in China Auto, Guanwei, and Kandi, respectively, to the date Becker consented to entry of judgment against him. The Court agrees. "It is within the District Court's equitable discretion to decide whether payment of interest should be ordered, and to decide upon both the interest rate and the period of time on which the interest will be calculated." SEC v. Teo, 746 F.3d 90, 109 (3d Cir. 2014)

Consistent with Third Circuit guidance and its own regulation, the SEC has calculated the interest on Becker's unlawful gains for the aforementioned date range according to IRS rates for the underpayment of taxes. See Teo, 746 F.3d 90, 109 (3d Cir. 2014) (approving use of IRS underpayment rate in SEC prejudgment interest calculations as consistent with its own regulation, 17 C.F.R. § 201.600). The resulting amount of prejudgment interest is $417,868. Plaintiff has offered no reason why prejudgment interest should not be assessed against him and has taken no issue with the SEC's method of calculating the amount of interest owed. Finding an award of prejudgment interest to be fair and just, the Court will grant the SEC's application for this remedy.

## C. Civil Penalties

Finally, the SEC requests that the Court impose civil penalties on Becker pursuant to the applicable provisions of the Securities Act, 15 U.S.C. § 77t(d)(2), and the Exchange Act, 15 U.S.C. § 78u(d)(3)(B). These provisions authorize money penalties in civil enforcement actions brought by the SEC and establish a tiered structure for penalty amounts. In this case, the SEC seeks a penalty in the amount provided by the third tier, the highest level, as of the time of Becker's misconduct. At the time Becker committed the majority of his misconduct, that is, 2009 and 2010, the maximum third-tier penalty consisted of $150,000 per violation, or in the alternative, the "gross amount of pecuniary gain . . . as a result of the violation." 15 U.S.C. § 77t(d)(2) and 15 U.S.C. § 78u(d)(3)(B).; see also 17 C.F.R. 201.1001 (setting forth inflation adjustments applicable to the Securities Act and Exchange Act civil penalty provisions for violations occurring in various timeframes, including, in relevant part, adjusted penalty amounts for violations occurring between March 4, 2009 and March 5, 2013).

In this case, the Court finds that Becker deserves to bear a civil penalty for his securities laws violations. A civil penalty must serve both a punitive and deterrent purpose. SEC v. Desai, 145 F. Supp. 3d 329, 338 (D.N.J. 2015). To determine whether to impose a civil penalty, a court considers the following factors:

> (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

Id. (quoting SEC v. Haligiannis, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007). Becker has admitted his active role in the securities fraud schemes. He concedes that he unlawfully offered and sold

stock in the three subject companies, knowing that he was not a registered stock broker and knowing that the securities were not registered, as required by securities laws. Becker further concedes that he manipulated the market to inflate trading volume and stock prices, and defrauded investors. His conduct created the risk that investors would sustain losses by purchasing over-valued stock. Becker knowingly defrauded investors and also benefitted personally from the sale of stock at artificially inflated prices. As has been demonstrated, he profited over two million dollars from his participation in the schemes. Moreover, his unlawful conduct occurred repeatedly. The first four factors, as applied to the facts of this case, militate in favor of the imposition of a civil penalty.

The Court then turns to the fifth factor—whether the amount of the penalty should be reduced—in light of Becker's plea for leniency based on his claimed financial struggles. Third-tier penalties are appropriate when the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and the violation "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d)(2)(C) and 78u(d)(3)(B)(iii). Clearly, for the reasons set forth above, a third-tier penalty is warranted in this case. Here, the maximum penalty under the statutes could amount to Becker's gross pecuniary gain of over $2 million, or alternatively, a total of $900,000, representing $150,000 for each of the six statutory violations committed by Becker. The Court, however, has discretion to impose a penalty in a lesser amount than authorized by the statutory provisions. Desai, 145 F. Supp. 3d at 338 (citing SEC v. Lazare Indus., Inc., 294 F. App'x 711, 715 (3d Cir. 2008)).

Becker maintains he should be spared from any penalties due to his inability to pay. He goes on at length in his papers regarding his personal and financial hardships, as well as his failing health. The following excerpt from his opposition brief illustrates the nature of his opposition to monetary penalties:

> I haven't made enough to support myself for 6 ½ [years] and had to borrow money every year, I showed the SEC at the Debtors exam. I've cut my bills tremendously from what they were. I still don't make enough money to make ends meet. If it wasn't for friends and family loaning me money I wouldn't have made it this far . . . If I couldn't borrow money from my 81 year old father lately I would stave and not have any money to take care of my special needs child who is 16 and my 1 year old who has no mother presently that live [sic] with me.

(Op., June 6, 2019, at 1.) He adds in his opposition, that he suffers from debilitating health problems:

> Due to my health problems, I can barely work or go anywhere., I suffer from vertigo, high blood pressure, stomach problems, heart problems, anxiety, depression, sleep deprivation, sleep apnea, fluid retention, and shoulder problems. I can barely walk due to major back problems that require an all-day operation in the hospital for two weeks, six months to a year in rehab . . . .

(Id.)

The Court is not persuaded by Becker's argument. As the SEC has demonstrated in its papers, Becker's claims of indigence ring hollow and are, quite frankly, self-serving. Becker runs a consulting company which, as he himself admits, earns him approximately $100,000 per year in fees. In addition, the evidence presented shows that Becker transfers money from the consulting company's bank account to his personal account when he needs to pay bills, thus augmenting his income. The SEC has demonstrated that, based on the evidence of record and Becker's own deposition testimony, Becker's annual income from 2016 to the present can reach

up to $180,000. Indeed, Becker has admitted, in a subsequent submission to the Court pertaining to the instant motion, that he earns in the low six-figure range each year. (Becker letter entered on June 29, 2019, ECF 44, at 6, stating: "I will never make more then [sic] 100 to 150K per year and with my health issues I will be lucky if I live another 5 ears plus all the surgeries I have to have.")

Becker also asserts in his opposition and sur-reply that he bears many liabilities, which his present income does not suffice to cover. Because of this, Becker argues, he simply lacks the means to pay any monetary penalties. Becker's monthly expenses, according to his deposition testimony, total approximately $19,215, and about $1.7 million in personal loans. He argues that that these liabilities, his lack of assets and inability to continue borrowing money impede his ability to pay penalties. However, these items by and large reflect an expensive lifestyle, including, among other expenses, over $4,000 in rent and carrying costs for a 3,000 square foot house; over $1,500 in car payments for his luxury car as well as his fiancé's car; and large amounts for entertaining clients. The loans he claims to be burdened by (as the SEC points out, they are largely undocumented) are interest-free, and this debt is held mainly by family and friends of Becker.

In short, while Becker's financial situation may be diminished from what it once was, it is not so dire as to render him unable to pay civil penalties. Nevertheless, the Court acknowledges that a maximum third-tier penalty of over $2 million, the full amount of Becker's pecuniary gain from his unlawful activities, may constitute a significant burden on Becker, especially when added to the disgorgement of those profits. Taking Becker's circumstances into account, the Court finds that the per-offense penalty of $150,000 for each violation, for a total of

$900,000, would be appropriate and adequate to serve the punitive and deterrent purpose of civil penalties for violation of securities laws.

### III. CONCLUSION

For the reasons discussed in this Opinion, the Court will grant the SEC's motion seeking the imposition of remedies and entry of final judgment against Defendant Becker. As set forth above, the Court will enter judgment against Becker, ordering him liable for disgorgement in the amount of $2,268,332; prejudgment interest in the amount of $417,868; and civil penalties, pursuant to the Securities Act and the Exchange Act, in the amount of $900,000.

                                              s/ Stanley R. Chesler
                                          STANLEY R. CHESLER
                                      United States District Judge

Dated: August 21, 2019